UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MUNGIN-BEY,<br>Plaintiff,<br>v.<br>CITY OF NEW YORK ET AL<br>Defendants. | **MEMORANDUM AND ORDER**<br>25-cv-04277 (LDH) (VMS) |

LASHANN DEARCY HALL, United States District Judge:

Christopher Mungin-Bey ("Plaintiff"), proceeding *pro se*, brings the instant action against the City of New York, Commissioner Molly Wasow Park, Natasha Phang-Lawrence, Home/Life Services Inc., Queens Family Residence LLC, Marcia Underwood, Grace Duodo, Warren English, Jeffery Laurent, Aaliyah Mandley, Desmond King, Leanna Castillo, Department of Social Services, Human Resources Administration, and the Department of Social Services (together, "Defendants") alleging negligence and violations of his due process rights, substantive due process rights, Fourth Amendment rights, and the Equal Protection Clause, the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.* Home/Life Services Inc., Queens Family Residence LLC, Marcia Underwood, Grace Duodo, Warren English, Jeffery Laurent, Aaliyah Mandley, Desmond King and Leanna Castillo ("Moving Defendants") move to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

[1] Defendants Department of Social Services/Human Resources Administration/Department of Homeless Services, Commissioner Molly Wasow Park, and Natasha Phang-Lawrence have, to date, not appeared in this action, nor moved to dismiss the Plaintiff's amended complaint.

## BACKGROUND[2]

Plaintiff's Amended Complaint is not the model of clarity. In essence, Plaintiff alleges that Defendants violated his rights by denying him public assistance, entering into his housing unit without his permission or notice, and retaliating against him while he was a resident of Queens Family Residence (the "Residence"), a homeless shelter operated by non-profit Home/Life Services Inc. (Am. Compl. ¶¶ 13-26, ECF No. 7.)

In June 2022, Plaintiff alleges that Defendant Duodu, who at all relevant times was a case manager at the Residence, demanded Plaintiff provide his and his daughter's medical records. (*Id.* ¶¶ 6, 13.) After Plaintiff refused to provide the requested medical records, Plaintiff alleges that Defendant Duodu threatened to report Plaintiff to Child Protective Services to remove Plaintiff's daughter from his custody. (*Id.* ¶ 14.) Under the duress of this alleged threat, Plaintiff further alleges that he was coerced into "signing a request for voluntary direct payment of emergency assistance funds." (*Id.* ¶ 15.) Plaintiff also alleges that Defendant Duodu, among others, entered into his housing unit without his notice or consent. (*Id.* ¶ 16.)

In August 2022, Plaintiff alleges that maintenance personnel were sent to Plaintiff's residence to inspect a reported leak. (*Id.* ¶ 17.) Plaintiff alleges that the maintenance personnel, acting under Defendant English's direction, destroyed Plaintiff's shower, leaving him and his daughter without a functional shower for approximately seven months. (*Id.* ¶¶ 17-18.) Defendant English is the Director of Social Services at Queens Family Residence LLC. (*Id.* ¶ 8.) Plaintiff also alleges that he and his infant child were "forced to live in substandard conditions," even after making repeated complaints to DHS and 311. (*Id.* ¶ 19.) Plaintiff alleges that the repairs were not made until March 2023. (*Id.*)

---

[2] The following facts are taken from the complaint and are assumed to be true for the purpose of deciding the instant motion.

At an unidentified point, Plaintiff applied for "a City FHEPS housing voucher." (*Id.* ¶ 20.) Plaintiff alleges that he submitted the "necessary documentation" to Defendant Jeffrey Laurent, a housing specialist at the residence, but received no meaningful assistance. (*Id.* ¶ 20.) Plaintiff alleges that Defendant Laurent later falsely reported the presence of drugs and alcohol in Plaintiff's unit. (*Id.* ¶ 21.) Plaintiff does not allege whether this false report occurred as part of Plaintiff's "FHEPS housing voucher" application or not. (*See id.*)

Plaintiff alleges that his case was reassigned to Defendant Aaliyah Mandley, a case manager at the Residence. (*Id.* ¶ 22.) Following this reassignment, Plaintiff learned that his spouse was never added to "his public assistance case and that he had been underpaid benefits." (*Id.*) Plaintiff also alleges that Defendant Mandley admitted that the Residence's staff maintained "a difficult client list" to make it more difficult for those residents to receive public assistance.[3] (*Id.* ¶ 23.)

Plaintiff further alleges that on June 1, 2023, Plaintiff returned home to find his unit's door wide open and later discovered that $2,000 was missing. (*Id.* ¶ 24.) Plaintiff alleges that the head of security at the facility, Defendant King, refused to investigate the theft after Plaintiff reported it to him. (*Id.* ¶ 25.)

In August 2023, Plaintiff alleges that his water was shut off without his notice or consent and that the water was not restored until Plaintiff contacted his City Council member's office. (*Id.* ¶ 26.)

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

[3] Plaintiff does not allege that he was included on the alleged "difficult client list." (*Id.*)

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted.)

Moreover, where, as here, a plaintiff is proceeding *pro se*, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This is "particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555)).

## DISCUSSION

### I. Violation of a Constitutional Right Claims

Plaintiff brings a number of claims for alleged violations of his federal constitutional rights pursuant to 42 U.S.C. § 1983. (*See* Amended Complaint ("Am. Compl.") at 4-5, ECF No. 7.) Moving Defendants argue that these claims fail because Moving Defendants, a homeless shelter and its employees, were not acting under color of state law. (Defs.' Mem. Supp. Mot. ("Defs.' Mem.") at 10, ECF No. 12-1.) Plaintiff's response is nonsensical and fails to substantively engage with Moving Defendants' arguments.[4] (Pl.'s Aff. Opp'n ("Pl.s' Opp'n") at 1-3, ECF No. 13.) In any event, the Court agrees with Moving Defendants.

It is well established that 42 U.S.C. § 1983 "itself creates no substantive rights." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Rather, 42 U.S.C. § 1983 allows a plaintiff to bring claims against a state actor who violates the plaintiff's constitutional rights. *Emerick v. United Techs. Corp.*, 104 F.3d 353 (2d Cir. 1996) (unpublished table decision) ("42 U.S.C. § 1983 provides a civil cause of action against a person, acting under color of state law, who deprives one of a right, privilege or immunity guaranteed by the Constitution or the laws of the United States."). To support a § 1983 claim, the "the conduct at issue 'must have been committed by a person acting under color of state law' . . . ." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Such "state action occurs where the challenged action of a private party is 'fairly attributable' to the state." *Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1027 (2d Cir. 1995) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

[4] Plaintiff's response focuses on the alleged impropriety and unconstitutionality of bar organizations and the need for judges and lawyers to recuse themselves from legal proceedings. (Pl.'s Aff. Opp'n ("Pl.s' Opp'n") at 1-3, ECF No. 13.) Accordingly, the Court does not consider Plaintiff's arguments in deciding the instant motion.

As a homeless shelter and its employees, Moving Defendants are not state actors. *E.g.*, *Reaves v. Dep't of Vet. Affairs*, No. 08-cv-1624, 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) (collecting cases); *see also Williams v. B.R.C. of New York*, No. 25-cv-00663, 2025 WL 446237, at *2 (E.D.N.Y. Feb. 10, 2025). However, in the interest of reading *pro se* Plaintiff's complaint "liberally and interpreted to raise the strongest arguments that [it can] suggest," *Sykes*, 723 F.3d at 403, the Court considers whether Moving Defendants are in "'such a close nexus between the State and the challenged action that seemingly private behavior may be treated as that of the State itself.'" *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Such a nexus may be found where "the state exercises coercive power over . . . the private actor," "the private actor operates as a willful participant in a joint activity with the State," or the private actor "has been delegated a public function." *Id.* at 313 (internal citations and quotations omitted). Plaintiff does not allege that the state exercised coercive power over Moving Defendants, that Moving Defendants were involved in a joint activity with the state, nor that Moving Defendants were delegated a public function. (*See* Am. Compl.) In the absence of any such allegations, the Court cannot find that Moving Defendants were state actors under the close nexus test. Thus, because Moving Defendants are not state actors, Plaintiff's claims alleging a violation of his constitutional right fail.

## II. FHA Claim

Plaintiff alleges that Defendants violated the FHA by failing to maintain habitable housing conditions. (Am. Compl. ¶ 29.)

The FHA makes it unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in

connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The FHA covers not just the initial sale or rental of a dwelling but "conduct that . . . would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling after acquisition."[5] *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019) (internal quotations and citation omitted). Courts in this circuit have found that a hostile housing environment claim under § 3604(b) of the FHA is cognizable and have analyzed such a claim employing a framework similar to that used to assess hostile work environment claims. *See Cain v. Rambert*, No. 13-CV-5807, 2014 WL 2440596, at *4 (E.D.N.Y. May 30, 2014) (collecting cases). Thus, a plaintiff seeking to establish a hostile housing environment claim must allege that (1) he was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) a basis exists for imputing the allegedly harassing conduct to defendants. *Id.* at *5 (citations omitted). In addition, a plaintiff must allege some nexus between the discriminatory conduct and housing. *Spavone v. Transitional Servs. of New York Supportive Hous. Program (TSI)*, No. 16-CV-1219, 2016 WL 2758269, at *7 (E.D.N.Y. May 12, 2016) (citing *People of State of N.Y. by Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988)). Defendants argue that Plaintiff's FHA claim fails because Plaintiff failed to allege that he is a member of a protected class or that Defendants' actions were motivated by discriminatory intent. (Defs.' Mot. Dismiss at 16-17.) Here again, the Court agrees with Defendants.

---

[5] Plaintiff does not specify which provision of the FHA he brings his claim under. Under a liberal reading of Plaintiff's claim that raises the strongest argument, *see Sykes*, 723 F.3d at 403, the Court construes Plaintiff's claim to arise under § 3604(b).

Absent from Plaintiff's Amended Complaint are any allegations that Plaintiff is a member of a protected class.[6] Also missing from Plaintiff's Amended Complaint are any allegations that Defendants' actions were motivated by a discriminatory intent. These omissions are fatal to Plaintiff's hostile housing environment claim. *See Cain*, 2014 WL 2440596, at *5; *see also Palmer v. Fannie Mae*, 755 F. App'x. 43, 45 (2d Cir. 2018) (summary order) ("Instead, a plaintiff can survive a motion to dismiss if the plaintiff can allege facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Plaintiff's FHA claim also fails as a retaliation claim under 42 U.S.C. § 3617. To allege a retaliation claim under the FHA, Plaintiff must allege that that (1) Plaintiff was engaged in a protected activity, (2) Defendants were aware of that activity, (3) Defendants took adverse action against him, and (4) a causal connection exists between the protected activity and the adverse action. *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002). Protected activity refers to "'action taken to protest or oppose statutorily prohibited discrimination.'" *Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). Plaintiff has not alleged that he was engaged in any protected activity. (*See* Compl.) Indeed, the only retaliatory action Plaintiff alleges was in response to Plaintiff's refusal to provide medical records. (Am. Compl. ¶¶ 13-14.) Refusal to provide

[6] The Second Circuit has not yet ruled on whether the FHA applies to homeless shelters. *See Caractor v. Davis-Moten*, No. 06-CV-5299, 2007 WL 9711077, at * 2 n.1 (E.D.N.Y. Aug. 29, 2007) ("While the Second Circuit has yet to address the issue, other courts have applied the Fair Housing Act to homeless shelters."). The Court assumes, without deciding, that the FHA applies to homeless shelters.

medical records is not a protected activity under the FHA. *See Gadson v. Riverbay Corp.*, No. 25-CV-5182, 2025 WL 2452353, at *8 (S.D.N.Y. Aug. 26, 2025) (protected activity includes making a complaint, testifying, assisting, or participating in a proceeding under the FHA) (citation omitted); *see also* 24 C.F.R. § 100.400 (interpreting the FHA's retaliation provision to prohibit "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act" or "reported a discriminatory housing practice to a housing provider or other authority"). Thus, Plaintiff has failed to allege any protected activity or any retaliatory action taken as a result of such protected activity. That failure dooms Plaintiff's FHA retaliation claim. *See Dickerson v. BPP PCV Owners LLC*, No. 24-3147-CV, 2026 WL 731024, at *2 (2d Cir. Mar. 16, 2026) (finding that the plaintiff's FHA retaliation claim failed where plaintiff failed to make any "allegations about [plaintiff]'s prior complaints, much less any allegation that the [alleged retaliation] was prompted by such complaint").

**III. Remaining State Law Claim**

Plaintiff's remaining claim alleges negligence in maintaining the homeless shelter under state law. (Am. Compl. ¶ 32.) Having dismissed Plaintiff's federal claims, the Court must consider whether to retain jurisdiction over Plaintiff's remaining state law claim. "Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)." *Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.*, 89 F. Supp. 3d 450, 459 (E.D.N.Y. 2015) (internal citation and quotation omitted). The Court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over

pendent state law claims." *Id.* at 461 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (internal quotations omitted)). "Once all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination" of supplemental jurisdiction. *Lundy v. Catholic Health Sys. Long Island*, 711 F.3d 106, 118 (2d Cir. 2013) (alteration in original) (citation omitted). Having considered judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction. Therefore, Plaintiff's state law claim is dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, Moving Defendants' motion to dismiss is GRANTED. In light of his *pro se* status, Plaintiff is granted leave to file an amended complaint within 30 days from the entry of this memorandum and order. *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000). The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this memorandum and order. Failure to file an amended complaint within 30 days, as directed by this memorandum and order, will result in dismissal of Plaintiff's case for failure to prosecute.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge